## CORRIGAN v. OKLAHOMA COAL CO.

No. 8396—Opinion Filed Jan. 29, 1918.

Rehearing Denied March 5, 1918.

(171 Pac. 47.)

(Syllabus.)

1. **Negligence—"Proximate Cause."**

Strictly defined, an act is the "proximate cause" of an event, when in the natural order of things and under the particular circumstances surrounding it such an act would necessarily produce that event; but the practical construction of "proximate cause" by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue.

2. **Master and Servant—Personal Injury—"Proximate Cause."**

Where an unexploded charge of dynamite is negligently left in a hole in the wall of an entry in a coal mine, which was plaintiff's working place, and where the mine owner's foreman failed to direct the plaintiff not to work therein, but permitted him so to do, and the plaintiff, the mine owner's employe, was injured by the explosion of said charge of dynamite while the plaintiff was engaged in drilling a hole in said entry in pursuance of his duties, held, that the negligence of the mine owner in leaving the unexploded charge of dynamite in the hole, and in directing and permitting the plaintiff to work therein under such circumstances, was the proximate cause of the injury.

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by James Corrigan against the Oklahoma Coal Company. Demurrer to petition sustained, and action dismissed, and plaintiff brings error. Reversed and remanded, with directions to reinstate case and to overrule the demurrer.

W. N. Redwine and M. N. Alexander, for plaintiff in error.

William M. Mathews, for defendant in error.

RAINEY, J. The parties to this action will be designated as they appeared in the trial court. One James Corrigan, as plaintiff, instituted suit against the Oklahoma Coal Company, a corporation, as defendant, for damages for personal injuries alleged to have been sustained by the plaintiff on account of the negligence of the defendant company. The defendant company filed a demurrer to the plaintiff's petition, on the ground that the petition did not allege facts sufficient to constitute a cause of action. The demurrer was sustained, and the action dismissed by the trial court, and the plaintiff brings the case here for review.

The material averments of plaintiff's petition, necessary to a determination of the questions presented, are as follows:

"(1) Comes the plaintiff, and avers that he lives and resides within the jurisdiction of the aforesaid court, and that said defendant, the Oklahoma Coal Company, a corporation, is the owner of and operates coal mines in the aforesaid county and state, and is within the jurisdiction of this court.

"(2) Plaintiff avers that on and prior to January 19, 1914, plaintiff was working for said defendant, the Oklahoma Coal Company, in its mine No. 6, located near Dewar, in the aforesaid county and state, said plaintiff was working in the capacity of what is known as brushing down the entry, and while working in said mine, and in what was known as the Fourth North Back Dip entry, and without any fault of plaintiff, said plaintiff was carelessly and negligently injured through the fault of said defendant, as hereinafter set forth.

"(3) Plaintiff avers that it was his duty, while in the performance of his work, to take the rock down from the roof of the entry wherein plaintiff was at work, and clean the same up after said rock had fallen; also cut said rock and coal from the sides of said entries in order to widen the same, and also to bore holes for the shot firer to fire his shots that the rock and coal might be loosened and taken down, which shots were to be fired by said shot firer after plaintiff had come out of said mine. On the previous day that said plaintiff had worked in said mine subsequent to his injuries, he drilled a hole in the wall of said entry and placed a stick of dynamite in the hole so drilled preparatory for the shot firer, when said shot firer went into said mine, to fire the same, and when plaintiff went in said entry to his work on Monday morning he discovered that the shot had not been exploded, but was still in the hole, and the plaintiff, in the performance of his duty, commenced to drill another hole a short distance from the first hole where the shot so remained unexploded, and while so drilling said hole, and without any fault of the plaintiff, the shot, by some cause unknown to this plaintiff, exploded and injured the plaintiff, as follows, to wit: Bursted the drum of the left ear of plaintiff, which rendered him absolutely deaf in said ear for life, fractured the ribs of plaintiff, and tore the muscles

therefrom, injuring the plaintiff in the left eye and his nose, which injuries are permanent.

"(4) Plaintiff avers that the hole drilled in the wall of the entry which exploded and injured this plaintiff was drilled on Saturday before plaintiff was injured on Monday following, and that same was attempted to be shot by the shot firer on Saturday, but the firing of same was unsuccessful, and at the time said plaintiff commenced to drill the second hole in the wall of said entry as aforesaid, he did not understand or appreciate the danger or hazards connected with the work of drilling a hole so near the hole, which was charged with dynamite, and which exploded.

"(5) Plaintiff avers that he had never been instructed by said defendant to not work about or near a hole charged with dynamite, and knew nothing about the danger connected therewith.

"(6) Plaintiff avers that it was the duty of said defendant to have a competent person employed as inside overseer of said coal company, to visit and examine, each and every day, all working places where employes were working in said mine, and to ascertain whether or not any danger exists in and about the working places of any employe, and, if so, to remove the same therefrom, and also to not permit any person to work in or about the place of danger, unless it is for the purpose of making said dangerous place safe.

"(7) Plaintiff avers that said defendant did not inspect or examine the place wherein plaintiff was injured by the explosion of the shot. as, aforesaid, to ascertain whether or not the same was in a dangerous or unsafe condition.

"(8) Plaintiff avers that he was permitted to work in and about the shot which had not exploded, as aforesaid, by said defendant. and was not directed to not work in and about said dangerous place.

"(9) Plaintiff avers that said defendant was careless and negligent in failing and refusing to inspect the working place of said plaintiff each and every day to ascertain whether or not the same was in a dangerous condition, and carelessly and negligently failed and refused to inspect the shot, or the dynamite in the hole which exploded and injured plaintiff, after the same had been placed therein, and had failed to explode, and carelessly and negligently directed the plaintiff and permitted him to go in and near the unexploded dynamite as aforesaid, and directed and permitted him to work in and about said dangerous place in the performance of his duty, in brushing down the entry, and which was not for the purpose of making said dangerous place safe.

"(10) Said defendant was careless and negligent in failing and refusing to instruct this plaintiff of the hazards and dangers of working in and about a hole which had been charged with dynamite, and which had not been exploded. All of which was defendant's duty to do so.

"(11) Plaintiff further avers that he was making, at the time of his injuries, about $5 per day, that he was confined to his bed about 30 days, and was unable to work; that since his injuries he has been unable to earn the money that he made before his injuries, and he has suffered and now suffers great pain and agony from said injuries, and by reason of the carelessness and negligence of said defendant and the concurrent careless and negligent acts of said defendant he has been damaged in the sum of $10,000."

It has frequently been held by this court that in an action for personal injuries the three essential elements constituting actionable negligence on the part of the master, when the wrong charged is not willful or intentionally done, are the existence of a duty on the part of the master to protect the servant, the breach of that duty by the master, and injury to the servant proximately resulting therefrom.   When any of these three essential elements are wanting in a petition, the petition does not state a cause of action, but when the petition alleges a state of facts comprising all these elements, it is sufficient to withstand a general demurrer.   Chicago, R. I. & P. Ry. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794; St. Louis & S. F. Ry. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Midland Valley Ry. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103.

An inspection of the petition under consideration discloses that plaintiff has alleged the duty of the master to furnish him a safe place within which to work; that through the negligence of the master, as particularly set out in the petition, said working place became unsafe, and through the further negligence of the master, as is also particularly set out in said petition, and in violation of the duties owed him by the master, that plaintiff was directed and permitted to work therein, and that as a result of said negligence the plaintiff was injured.   The rule is that negligence to render a defendant liable must be the proximate cause of the injury, and that connection between the act or omission and the resulting injury must be shown, and a complaint is insufficient if it fails to show such connection, or where the contrary appears from the other allegations. But no particular form of allegation is necessary, and where the negligent act causing the injury is set out with an allegation that by reason of, by, through, or in consequence of such negligence the plaintiff was injured, it is equivalent to an allegation that the defendant's negligence caused the injury, or

that the injury was wholly caused thereby. 29 Cyc. 573. While there is no direct allegation in the petition under consideration that the plaintiff's injuries were caused solely by the defendant's negligence, we think the petition, alleging, as it does, the particular acts of negligence complained of in connection with the allegation that, "without any fault of plaintiff, said plaintiff was carelessly and negligently injured through the fault of said defendant, as hereinafter set forth," was sufficient as against a general demurrer. It follows that the petition states a cause of action, unless counsel for defendant is correct in his contention that, although plaintiff's petition sufficiently charges primary negligence on the part of the defendant, it further appears therefrom that such negligence was not the proximate cause of plaintiff's injuries, but that the negligent act of plaintiff in drilling a hole in close proximity to the stick of dynamite was the proximate and sole cause of his injuries. Notwithstanding the fact that plaintiff has alleged in effect that his injuries were proximately caused by the negligence of the master, as set out in his petition, if it appears from the facts, as alleged in said petition, that the negligence of the master, therein pleaded, had no causal connection with the plaintiff's injuries, or that said injuries were proximately caused by some other agency, in this case the act of the plaintiff in drilling the hole, the petition would be demurrable. From the facts alleged, which are conceded to be true for the purposes of the demurrer, was the alleged negligence of the master the proximate cause of the plaintiff's injuries? In the case of City National Bank of Mangum v. Crow et al., 27 Okla. 107, 111 Pac. 210, Ann. Cas. 1912B, 647, it was held:

"It is true that, as a general rule, if one is guilty of a negligent act which would not have produced the loss or injury but for the subsequent intervening negligence of another, he will not be responsible for the resulting damages. 1 Thompson's Commentaries on the Law of Negligence, § 55. This doctrine, however, is subject to the proviso, among others that the circumstances were such that the injurious result which did happen might have been foreseen as likely to result from the first wrongful act or omission. 1 Thompson's Commentaries on the Law of Negligence. § 57. The test of whether the act complained of was the remote or proximate cause of the injury is to be found in the probably injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise. 1 Thompson's Commentaries on the Law of Negligence. § 58."

In the case of Missouri, O. & G. Ry. Co. v. Miller, 45 Okla. 173, 145 Pac. 367, the contention was made that an act of the plaintiff, and not the primary negligence of the master, was the proximate cause of the injury, and the views of the court therein expressed are applicable to the question under consideration. In disposing of the contention made this court, in an opinion by Mr. Justice Riddle, said:

"Approaching the fourth reason, it is contended that the act of the defendant in piling the coal and permitting it to remain near the track was not the proximate cause of the injury, but that it was the act of plaintiff in rushing out and attempting to board a moving train. This contention is untenable. It is true, had plaintiff remained in the storeroom and not attempted to board the train, he would not have been injured at this time and by this particular train. It is also reasonably certain that, had the coal not been piled near this track, plaintiff could and would have boarded the train safely; but, according to plaintiff's theory, under his employment and under instructions of his superior, he was required to board this train. If his testimony is true, after he first noticed the train, it would have been most impossible for him to have run around the train and flagged it from the opposite side, for the end of the rear coach had already passed his door when he ran out. The question is: When an experienced railroad man, who has been accustomed to boarding moving trains, was presented with a condition of this kind, what action is he authorized to take? What would have been reasonable to expect of a man of his experience in performing the duty which he was called upon to perform? If he performed this duty as a reasonable man, engaged in such work with his experience under the same conditions and circumstances would have performed it, and in obedience to orders of a superior, who was authorized to give such orders, then it cannot be said that his acts were the approximate cause of the injury. Strictly defined, an act is the 'proximate cause' of an event when in the natural order of things and under the particular circumstances surrounding it such an act would necessarily produce that event; but the practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue. Enochs v. Pittsburg, C., C. & St. L. Ry. Co., 145 Ind. 635, 44 N. E. 658. Or, as stated by some of the courts, where the question is whether a cause proximate to the accident, the test is whether it was such that a person of ordinary intelligence and prudence should have foreseen that the accident was liable to be produced by that cause. Wilber v. Follansbee, 97 Wis. 577, 72 N. W. 741, 73 N. W. 559; Block v. Milwaukee St. Ry. Co., 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; Davis v. Chicago. M. & St. P. Ry. Co. 93 Wis. 470, 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St.

Rep. 935. Where different forces and conditions concur in producing a result, it is often difficult to determine which is proper to be considered the cause. The law will not go further back than to find the active, efficient, and procuring cause of which the event under consideration is a natural consequence. Freeman v. Mer. Mut. Acc. Ass'n, 156 Mass. 351, 30 N. E. 1018, 17 L. R. A. 753. See, also, City Council of Montgomery v. Wright, 72 Ala. 411, 47 Am. Rep. 422; Shear. & R. Neg. § 10; Williams v. So. Pac. Ry. Co. [2 Cal. Unrep. Cas. 613] 9 Pac. 152; Texas & P. Ry. Co. v. Woods, 8 Tex. Civ. App. 462, 28 S. W. 416; American Exp. Co. v. Risley, 179 Ill. 295, 53 N. E. 558; Missouri, K. & T. Ry. Co. v. Byrne, 100 Fed. 359, 40 C. C. A. 402. Applying this definition to the facts in the instant case, and accepting plaintiff's theory of the case as true, defendant might expect him under the circumstances to board the train at the time and in the manner in which he undertook to board it: and, with this in mind, it seems to us the approximate cause of the injury was the act of defendant in piling the coal so near the track that it would be probable that plaintiff, in attempting to board this train, would likely come in contact with such coal, resulting in the accident or injury complained of."

See, also, Chicago, R. I. & P. Ry. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794; Midland Valley Ry. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9.

In the case of Bales v. McConnell et al., 27 Okla. 407, 112 Pac. 978, 40 L. R. A. (N. S.) 940, the alleged negligence of the master consisted in leaving cogs unguarded in a horse-power corn sheller. The petition in that case also alleged that the plaintiff slipped from a wagon which was near said machine, and upon alighting on the ground threw out his hand to protect himself, and in throwing out his hand it caught in the cogs. The trial court sustained a demurrer to his petition. In support of the action of the trial court the defendant contended that plaintiff's slipping and falling from the wagon was the proximate cause of the injury, and that the exposed cogwheels only gave rise to the condition which made the accident possible, and argued that if the plaintiff had not slipped and fallen from the wagon, the accident would not have occurred. This court, in an opinion by Mr. Justice Turner, held that the trial court erred in sustaining the demurrer to the petition, and said:

"That which caused plaintiff to slip from the wagon was the cause of his fall, but the negligently unguarded cogs were the proximate cause of his injury."

The opinion in the case contains an instructive discussion of proximate cause.

In applying the principles deducible from the above authorities to the facts as alleged by the plaintiff in this case, we must say that the alleged negligence of the master in permitting the working place of the plaintiff to become unsafe by one of the master's employes leaving an unexploded charge of dynamite in the wall of the entry of plaintiff's working place, and the further negligence of the mine owner's foreman in failing to inspect said working place, as required by the Mining Act, § 3988, Rev. Laws Oklahoma 1910, and the negligence of the mine owner's foreman in directing and permitting the plaintiff to work near the unexploded charge of dynamite was the proximate cause of plaintiff's injuries. Under such circumstances it seems to us that the injurious result which did happen might have been foreseen as likely to result from plaintiff performing his usual duties in his working place, and the consequences were such as should have been anticipated by the master.

Upon a trial of the issues in this case a jury might be justified in finding that the act of the plaintiff in drilling the hole near the unexploded charge of dynamite was contributory negligence, but that question cannot be determined upon general demurrer to the petition. In Duncan Cotton Oil Co. v. Cox, 41 Okla. 633, 139 Pac. 270, it was held that where the petition charged certain specific acts of negligence on the part of the defendant as the proximate cause of the accident resulting in the death of the deceased, it was not error to overrule a general demurrer to the petition, even though said petition contained statements from which the negligence of the deceased might be inferred.

For the reasons stated, this cause is reversed and remanded, with directions to the trial court to reinstate the case and overrule the defendant's demurrer to the plaintiff's petition.

All the Justices concur, except KANE, J., and SHARP, C. J., who concur in the conclusion.